IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AARON LITTLE FRENCH                *
     Plaintiff,
                                  *

    v.                                                   CIVIL ACTION NO. CCB-10-820
                                  *

CORRECTIONAL MEDICAL SERVICES,
 INC., et al.                                     *
     Defendants.

## MEMORANDUM

On March 1, 2010, Aaron Little French filed this 42 U.S.C. § 1983 prisoner civil rights action seeking injunctive relief and money damages in the Circuit Court for Allegany County, Maryland. ECF No. 2. French claims his Eighth Amendment right to medical care was violated when on multiple occasions between December 21, 2009 and the second week of January, 2010,[1] he was denied vital medication.[2] Defendant Correctional Medical Services ("CMS") has filed an unopposed dispositive motion.[3] ECF No. 10. Materials outside the pleadings have been considered and defendant's dispositive motion shall be reviewed as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure and for reasons to follow determined on the pleadings without hearing. *See* Local Rule 105.6 (D. Md. 2010).

---

[1] To the extent French seeks relief based on a state tort claim for medical malpractice, the claim shall be dismissed without prejudice. Under Maryland law, such claim could proceed only after the parties complete review before the Maryland Health Claims Arbitration Board. See Md. Code Ann., Cts & Jud. Proc., §3-2A-01 *et seq.; see also Davison v. Sinai Hospital of Balt. Inc*., 462 F.Supp. 778, 779-81 (D. Md. 1978), *aff'd* 617 F.2d 361 (4th Cir. 1980); *Group Health Ass'n, Inc. v. Blumenthal*, 295 Md. 104, 114-15 (1983). There is no demonstration that French has sought or completed such review.

[2] Plaintiff claims that during the time in question he took five daily medications, including Zocor (to lower cholesterol), aspirin, ibuprofen (for pain), and the hypertension medications enalapril (Vasotex) and amlodipine (Norvasc).

[3] French was provided notice of the filing pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) and informed of his right to present opposition materials. ECF No. 11. Although he requested extensions through November 1, 2010, no response has been filed.

Under Rule 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr.*, *Inc*., 290 F.3d 639, 645 (4th Cir. 2002), but must also must abide by "the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

Defendant CMS argues that the complaint should be dismissed against it because as a corporate entity it cannot be held liable under 42 U.S.C. § 1983. A private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of *respondeat superior*. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Dep't of Public Safety and Correctional Services,* 316 Fed. Appx. 279, 282 (4th Cir. 2009). While the court agrees that CMS is not a proper defendant, CMS's dismissal from this suit does not end the court's Eighth Amendment inquiry.[4]

---

[4] French also names the Maryland Division of Correction ("DOC") as a defendant, presumably because it enforces a policy wherein prisoners who ordinarily are permitted to keep their daily medications in the cells must surrender the medications when they are transferred for court appearances. ECF No. 2 at 9. Service of process has not been obtained on the DOC. In any event, the Eleventh Amendment immunizes states from suit brought in federal court absent waiver from the state or a clear congressional exercise of its power under the Fourteenth Amendment. *See Will v. Michigan Department of State Police*, 491 U.S. 58, 66 (1989). The Maryland Division of Correction is an entity within the Department of Public Safety and Correctional Services, a state department that is immune from

As a prisoner claiming denial of medical care in violation of the Eighth Amendment, French must prove two elements, one objective and one subjective. First, he must satisfy the objective element by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If this first element is satisfied, French must then prove the subjective element by showing "deliberate indifference" on the part of prison officials or health care personnel. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837. Health care staff are not liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844; *see also Johnson v. Quinones*, 145 F.3d at 167.

French states that on the morning of December 21, 2009, a nurse employed by CMS asked him to surrender all the prescription medications in his possession because he was to be transferred from North Branch Correctional Institution (NBCI) to court later that day. ECF No. 2 at 3. He did not return to NBCI until December 28, 2009, and states he did not receive his medication at all during that time. He attributes the headache, dizziness, chest pains and black outs he allegedly experienced during that time to the lack of medication. *Id*. at 5-6. He further

---

suits in federal court by citizens. *See Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100 (1984); *Clark v. Department of Public Safety and Correctional Services*, 316 Fed. Appx. 279, 282 (4th Cir. 2009) (unpublished). The State of Maryland has not waived its immunity under the Eleventh Amendment to such suits.

claims that medical staff at NBCI did not restore his medication regimen until some unspecified time after January 9, 2010, resulting in pain and another blackout. *Id*. at 7-8.

The uncontroverted medical record, condensed in the affidavit of Colin Ottey, M.D., reveals that French has a history of hypertension ("HTN") combatted by the prescription medications Norvasc (amlodipine) and Vasotec (enalapril). During the time in question he also received Motrin for headache and citalopram, an antidepressant. The medications had been prescribed on December 4, 2009, and the prescriptions were to continue until March of 2010. ECF No. 10, Exhibit A, ¶ 3 and Exhibit B at 11-12.

On December 18, 2009, French was transferred from NBCI on route to the Maryland Correctional Adjustment Center in Baltimore ("MCAC") for a court date. *Id*., Exhibit A, ¶ 4. It appears he was housed at the Maryland Correctional Institution-Hagerstown ("MCI-H") and shuttled between that facility and MCAC for several days while he appeared in court. While at MCI-H he was required to visit the prison pharmacy twice a day to receive his antidepressant medication. It appears he received citalopram twice on December 23, and once a day from December 24 through December 28, 2009. *Id*., Exhibit A, ¶ 7. Neither the medical affidavit nor the medical records reflect that French was given his HTN medications during this time, and no records reflect that he inquired about those medications during his daily visits to the prison pharmacy.

On December 23, 2009, French was seen by a physician and a nurse in the medical dispensary at MCI-H after he reported feeling dizzy. French was given unspecified medication and told to lay down. He later reported falling down and hitting his head, back, right elbow and right knee. A nurse examined French and found a one-eighth inch abrasion on the right elbow, for which he was given Motrin for discomfort. *Id*., Exhibit A, ¶ 5.

French returned to NBCI on December 28, 2009, and submitted a sick call request form on December 30, 2009, asking for assistance clipping his toe nails and complaining of skin irritation and numbness in the mouth after he washed his mouth with soap.[5] It is apparent that French received his antidepressant medications at least once a day after his December 28, 2009 return to NBCI through January 13, 2010. *Id.*, Exhibit A, ¶ 8. There is no indication, however, that his HTN medications were also provided during this period.

On January 13, 2010, French submitted a sick call request form complaining of constant headaches, dizziness, fainting spells, and tightening around the heart with a dull sensation of pain. *Id.*, Exhibit A, ¶ 9. The following day, his HTN medications were received. *Id.*, Exhibit A, ¶ 11. On January 16, 2010, a nurse evaluated his complaint of chest pain and found nothing remarkable. French's blood pressure was slightly elevated. *Id.*, Exhibit A, ¶ 10. It remained slightly elevated on January 17, and the physicians' assistant who examined French that day ordered two weeks of follow-up blood pressure monitoring. Over the course of the next two weeks, French's blood pressure was nearly normal. On January 28, 2010, French refused further blood pressure testing. *Id.*, Exhibit A, ¶ 11.

At best, the record before the court is incomplete, leading to a conclusion that French may well have missed doses of his HTN and antidepressant medications over a three-week period spanning December 23, 2009 through January 13, 2010. Defendant's affiant does not explain whether the HTN medications were provided on the days French reported to the prison pharmacy to receive his antidepressant medication, a fact not apparent from the medical record. Likewise, while this court must accept as true French's claim that the nurse making rounds on the tier failed to respond to his requests for medication, the court cannot ignore the fact that

---

[5] Despite French's claim to the contrary (ECF No. 2 at 7), the December 30, 2009, medical slip does not contain a complaint that he was not receiving his medications. ECF No. 10, Exhibit B at 5.

French had an opportunity to request (and obtain) his HTN and pain medications during his frequent visits to the dispensary to receive his antidepressant medication.

The court simply cannot find from the record that any failure to provide medication for the brief periods at issue led to an actual worsening of French's hypertension or to his reported episodes of dizziness or chest pain, or that the care he has received since January 13, 2010 is in any way deficient. While the medical record does not evince a high standard of care or a practice of solid record-keeping, French has not sustained his burden of demonstrating an Eighth Amendment violation.

For the aforementioned reasons the case defendants' Motion, construed as a motion for summary judgment, shall be granted. A separate order follows.

<u>Dec. 30, 2010</u>  /s/
Date  Catherine C. Blake
 United States District Judge